IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

BOBBY TYRESE CLEMONS                                                    PLAINTIFF

VS.                                                 CIVIL ACTION NO. 2:09cv149-MTP

RON KING, ET AL.                                                       DEFENDANTS

**OPINION AND ORDER**

THIS MATTER is before the court on the Motions for Summary Judgment [36][41][44] filed by Defendants April Meggs, Ron King, Christopher Epps, Dr. McCleave and Dr. Woodall, and on the Motion to Strike [39] and the Motion to Dismiss [50] filed by Plaintiff. Having reviewed the submissions of the parties and the applicable law, the court finds that the Defendants' Motions for Summary Judgment [36][41][44] should be granted and Plaintiff's Motion to Strike [39] and Motion to Dismiss [50] should be denied.

FACTUAL BACKGROUND

Plaintiff Bobby Tyrese Clemons , proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on August 3, 2009. Through his complaint, and as clarified during his *Spears*[1] hearing, Plaintiff alleges claims against Defendants Dr. Ron Woodall and Dr. Charmaine McCleave for the denial and/or delay of adequate medical treatment in violation of the Eighth Amendment, and claims that Defendants April Meggs, Ron King and Christopher Epps failed to adequately investigate the situation and failed to ensure that he received appropriate medical attention. *See* Scheduling and Case Management Order [29]. The

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing took place on December 15, 2009. *See* Transcript [30].

1

allegations in Plaintiff's complaint occurred while he was a post-conviction inmate at the South Mississippi Correctional Institution ("SMCI"). Plaintiff is currently incarcerated at the East Mississippi Correctional Facility ("EMCF") serving a life sentence after having been convicted of three counts of homicide/murder in Neshoba County.

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

**Denial of Adequate Medical Care**

Plaintiff alleges a claim against the Defendants for the denial and/or delay of adequate medical treatment in violation of the Eighth Amendment. Specifically, he claims he was denied adequate medical treatment by Dr. Ron Woodall and Dr. Charmaine McCleave for his hand injury that occurred on or about August 21, 2008.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

4

from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

The record reflects that Plaintiff submitted a sick call request on August 22, 2008, stating that he injured his right hand while jumping off his rack (bed). In the sick call request form, Plaintiff stated that he thought he "knocked the knuckle out of place" on his right hand and that it was swollen and causing him pain. Plaintiff saw Nurse DeLaRosa on August 23, 2008, and she noted that his right hand was swollen but he was able to move his fingers and there was no break in the skin. Nurse DeLaRosa referred Plaintiff to a doctor. *See* Ex. A [58] to Motion at 1.[2]

---

[2]Plaintiff's medical records, Ex. A to Defendants' Motion [44], were filed under seal as document number [58].

On August 25, 2008, Dr. Woodall evaluated Plaintiff's hand and ordered an x-ray. The x-ray revealed that there was a fracture at the head of the fourth metacarpal with volar[3] angulation. *See* Ex. A [58] to Motion at 2; Woodall Affidavit, Ex. B to Motion [44-3]. Dr. Woodall noted that Plaintiff had swelling in his right hand, as well as decreased range of motion with flexion, and that he was tender in the fourth PIP joint. Based on the results of the x-ray and his examination, Dr. Woodall requested an orthopedic consult for Plaintiff. Dr. Woodall also prescribed Ibuprofen 800 mg, three times a day for one month, and ordered that his hand be wrapped in an Ace bandage. *See* Ex. A [58] to Motion at 2-5; Woodall Affidavit, Ex. B to Motion [44-3].

The record reflects that on August 25, 2008, following his examination of Plaintiff, Dr. Woodall completed an MDOC Specialty Care Consultation Request for Plaintiff to receive an orthopedic consult for a fracture of the right fourth metacarpal and faxed the form to the MDOC's Office of Medical Compliance. On August 25, 2008, Dr. Woodall received a fax from the Office of Medical Compliance requesting additional information on Plaintiff, including the date of his injury and a copy of the x-ray report. The requested records were faxed on August 29, 2008. *See* Ex. A [58] to Motion at 6-9; Woodall Affidavit, Ex. B to Motion [44-3].

On September 2, 2008, Plaintiff submitted a sick call request form stating that he had injured his right hand the prior week and was given a hand brace to wear until he had surgery, but that he was actually given a brace for the left hand and not the right. He also wanted to know if an appointment had been made for him to get his hand "fixed." Plaintiff saw Dr. Woodall the

---

[3]Volar is defined as "pertaining to the sole or palm; indicating the flexor surface of the forearm, wrist, or hand." *See* http://www.mercksource.com/pp/us/cns/cns_hl_dorlands_split .jsp?pg=/ppdocs/us/common/dorlands/dorland/nine/000116785.htm.

next day and Dr. Woodall noted that the Ace wrap was intact to his right hand and he was neurovascularly intact. Dr. Woodall ordered an injection of 60 mg of Toradol for pain. Dr. Woodall also ordered that the x-rays of Plaintiff's right hand be sent with him for his orthopedic appointment scheduled for September 10, 2008. *See* Ex. A [58] to Motion at 2, 10-12; Ex. B to Motion [44-3].

On September 9, 2008, Plaintiff was transferred from SMCI to the Central Mississippi Correctional Facility ("CMCF") to attend the appointment scheduled with an outside orthopedic specialist. On September 10, 2008, Plaintiff was evaluated by Dr. Gary McCarthy, who noted that Plaintiff was a 30-year old male who had experienced an injury to the fourth finger of his right hand three and a half weeks earlier while he was getting off a top rack (bed). Dr. McCarthy noted that Plaintiff needed to protect the injured area of his hand for three weeks, and that no follow-up was needed. *See* Ex. A [58] to Motion at 13-14; Ex. B to Motion [44-3].

On September 10, 2008, Dr. Rochel Walker at CMCF completed a Return From Off-site Follow-Up form and noted that Plaintiff had gone out for an examination of his right hand, that the consultant made no recommendations for tests or medications, and that there were no plans for hospitalization or follow-up visits. Plaintiff returned to SMCI on September 12, 2008, and Dr. Woodall completed a Return From Off-site Follow-Up form, making similar notations to Dr. Walker's described above. Dr. Woodall also ordered that Plaintiff's hand be x-rayed again in one month so the status of the fracture in his fourth finger could be re-evaluated after the additional three weeks of protection recommended by Dr. McCarthy were complete, and noted that Plaintiff should return to the clinic for a follow-up visit in one month. *See* Ex. A [58] to Motion at 15-18; Ex. B to Motion [44-3].

On October 8, 2008, Plaintiff's right was x-rayed and the radiology report reflected the

following findings: "There is a healing fracture at the head of fourth metacarpal. There is mild volar angulation. Alignment and position of fracture remain unchanged since previous study of 8/25/08." *See* Ex. A [58] to Motion at 19.

On October 16, 2008, Plaintiff saw Dr. McCleave for a follow-up visit for the fracture to his right hand. Plaintiff advised Dr. McCleave that he went to an orthopedic consultation, but claimed that nothing was done and wanted information on the status of his hand. On physical evaluation, Dr. McCleave noted that Plaintiff had decreased extension at the PIP joint due to angulation, and that an x-ray taken on October 8, 2008 showed a healing fracture with some angulation. Dr. McCleave also noted that Plaintiff understood the angulation and stated that he would rather not have surgery unless it would make his hand "a lot better." *See* Ex. A [58] to Motion at 20, 23.

On February 23, 2009, Plaintiff submitted a sick call request to follow-up on his hand injury. In that form, Plaintiff stated he went to have surgery on his right hand, but he was sent back because his x-rays were not sent with him to the outside consult. Plaintiff also stated that he was still experiencing pain and that his fingers were not functioning as they should. He further stated that he had never refused to have surgery and wanted to know why he had not been rescheduled for surgery. On physical assessment, Nurse Howell noted that Plaintiff had decreased grip in his right hand and a slight decrease in the range of motion and decreased control of his second finger. No swelling was present. Nurse Howell referred Plaintiff to a doctor. *See* Ex. A [58] to Motion at 21.

Plaintiff saw Dr. McCleave on March 19, 2009, and again reported that he saw Dr. McCarthy but returned with nothing done. Plaintiff also reported he was having looseness and intermittent numbness in his right hand. On physical examination, Dr. McCleave noted that no

edema or erythema was present, that Plaintiff had a full range of motion, and that he was neurovascularly intact. However, there was some instability in the fourth metacarpal joint. Dr. McCleave ordered an x-ray and noted that she would request a consultation with an outside orthopedic specialist once she received the x-ray results. The x-rays taken on March 19, 2009 revealed a healed fracture of the head of the fourth metacarpal with mild volar angulation and showed that there was no new fracture. The radiology report stated the following impression: "Healed fracture of the first metacarpal with satisfactory alignment and position." *See* Ex. A [58] to Motion at 22-24; Ex. C to Motion [44-4].

On March 27, 2009, Dr. McCleave completed an MDOC Specialty Care Consultation Request for Plaintiff to be evaluated by an outside orthopedic specialist for a possible ligamentous injury to his right hand. In submitting that request to the MDOC's Office of Medical Compliance, Dr. McCleave included the report of the x-rays taken on March 19, 2009. *See* Ex. A [58] to Motion at 25; Ex. C to Motion [44-4].

On May 4, 2009, Plaintiff submitted another sick call request form complaining of limited use of his finger and pain resulting from his injury in August 2008. He requested to have his hand checked by an orthopedic specialist. On physical assessment, Nurse Howell noted that the fourth finger was deformed and that there was limited control over its movement. Plaintiff saw Dr. McCleave on May 12, 2009, stating that he was worried about his hand. On physical examination, Dr. McCleave noted that there was no change in Plaintiff's condition and advised Plaintiff that she would check on his orthopedic consult. She also prescribed Mobic for his pain. *See* Ex. A [58] to Motion at 26-27.

On May 22, 2009, in response to the request for specialty care submitted by Dr. McCleave, the MDOC's Office of Medical Compliance requested a new x-ray and evaluation

and inquired whether Plaintiff had tried physical therapy. Dr. McCleave responded to the request by submitting a note stating that physical therapy was not available at SMCI. Dr. McCleave ordered a new x-ray of Plaintiff's right hand on May 27, 2009. However, before that x-ray was obtained, Plaintiff was transferred from SMCI to EMCF on June 8, 2009. *See* Ex. A [58] to Motion at 27-32; Ex. C to Motion [44-4].

In their Motion [44] and Supporting Memorandum [45], Defendants argue that Plaintiff has failed to establish that Dr. Woodall and Dr. McCleave were deliberately indifferent to his serious medical needs, and thus, they are entitled to judgment as a matter of law. In support of their Motion [44], Defendants submitted the Plaintiff's medical records, and the affidavits of Dr. Ron Woodall and Dr. Charmaine McCleave. *See* Ex. A [58]; Exs. B-C to Motion [44].

In his Motion to Dismiss [50] and Supporting Memorandum [51], which the court construes as responses in opposition to Defendants' Motion [44], Plaintiff argues that Dr. Woodall gave him a metal brace for the left hand, when his right hand was injured. *See* Memo. [51]. As set forth above, the record reflects that on Plaintiff's initial visit Dr. Woodall ordered that his hand be wrapped in an Ace bandage, and not a metal brace. *See* Ex. A [58] to Motion at 2-5; Woodall Affidavit, Ex. B to Motion [44-3]. Dr. Woodall's sworn testimony is consistent with the medical records, and reflects that he never provided or ordered a metal brace for Plaintiff's hand. Even assuming Dr. Woodall did provide Plaintiff with a metal brace for the wrong hand, such conduct would constitute negligence, and not deliberate indifference. *See supra*, *Daniels*, 474 U.S. at 333-34; *see also McMahon*, 583 F.2d at 174.

Plaintiff next claims that Dr. Woodall made Plaintiff wait nearly a week before correcting the alleged incorrect brace issue and giving him pain medication. *See* Memo. [51]. As set forth above, Dr. Woodall prescribed Plaintiff Ibuprofen 800 mg, three times a day for one month for

10

his pain on his initial visit of August 25, 2008. Further, when Plaintiff submitted a sick call request complaining of pain and the wrong brace, Dr. Woodall saw Plaintiff the very next day. Dr. Woodall noted that the Ace wrap was intact to his right hand and he was neurovascularly intact and ordered an injection of 60 mg of Toradol for pain. Plaintiff's conclusory allegations are clearly without merit.

Plaintiff also claims that Dr. Woodall did not send his x-rays to his specialist for the outside consult, which prevented him from having surgery. He claims that had the x-rays been sent to his appointment, the doctor would have performed surgery on his hand. The record reflects that on or about September 5, 2008, Dr. Woodall ordered that the x-rays of Plaintiff's right hand be sent with him for his orthopedic appointment scheduled for September 10, 2008. *See* Ex. A [58] to Motion at 12; Ex. B to Motion [44-3]. Dr. Woodall's affidavit reflects that once he ordered the x-rays to be sent to Plaintiff's orthopedic consult appointment, he was not involved in actually sending the x-rays. Accordingly, Dr. Woodall cannot be held responsible if a nurse or other staff member failed to send the x-rays pursuant to his order. *See supra, Oliver,* 276 F.3d at 742 & n.6; *Thompkins*, 828 F.2d at 304; *Ashcroft*, 129 S. Ct. at 1948. Further, Dr. McCarthy, the orthopedic specialist, made no mention of a missing x-ray in his notes, or of a need for further x-rays. Nor did Dr. McCarthy make any note that surgery was recommended. Indeed, Dr. McCarthy noted that no follow-up appointment was needed. *See* Ex. A [58] to Motion at 13-14; Ex. B to Motion [44-3]. Plaintiff claims that "the only reason Dr. McCarthy did not call [him] back to perform surgery is and was because Dr. McCarthy thought it was obvious that Dr. Woodall and Dr. McCleave had terminated or declined another scheduled visit . . . ." Memo. [51] at 8. This conclusory allegation is contrary to the medical records, including the Specialty Provider Consultation Report completed by Dr. McCarthy. Based on the

11

foregoing, Plaintiff has failed to show that Dr. Woodall was deliberately indifferent to his serious medical needs.

Plaintiff complains that Dr. McCleave ordered him to see a specialist for his hand, but that he was never actually seen by a specialist. *See* Memo. [51] at 3. He also complains that Dr. McCleave did nothing but give him pain medication after conducting her x-rays. *Id.* at 6. As set forth above, the record reflects that Dr. McCleave submitted a request for a follow-up appointment with an orthopedic specialist to the MDOC's Office of Medical Compliance on or about March 27, 2009. The request noted a potential ligamentous injury to Plaintiff's right hand. *See* Ex. A [58] to Motion at 25. Dr. McCleave included the report of the x-rays taken on March 19, 2009 with the request. Dr. McCleave's affidavit reflects that once she submits a specialty consultation request to the MDOC Office of Medical Compliance, the matter is out of her control. Dr. McCleave's sworn testimony states that she has no authority to schedule off-site consultations for inmates; rather, such a request must be approved and scheduled by the Office of Medical Compliance. *See* Ex. C to Motion [44-4]. Dr. McCleave cannot be held responsible for the fact that the MDOC Office of Medical Compliance did not approve the request until May 22, 2009. Pursuant to the request of the MDOC Office of Medical Compliance, Dr. McCleave ordered a new x-ray of Plaintiff's right hand on May 27, 2009. However, before that x-ray was obtained, Plaintiff was transferred from SMCI to EMCF on June 8, 2009. *See* Ex. A [58] to Motion at 27-32; Ex. C to Motion [44-4].

Plaintiff has failed to show that Dr. Woodall or Dr. McCleave were deliberately indifferent to his serious medical needs. *See Davidson*, 91 Fed. App'x at 964. Based on the evidence before the court, neither Dr. Woodall nor Dr. McCleave ever refused to treat Plaintiff, ignored his complaints, or denied him medical treatment. To the contrary, Plaintiff was provided

with medical care each time he presented a complaint. Plaintiff's disagreement with Dr. Woodall's and/or Dr. McCleave's treatment does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292. Even if Dr. Woodall and Dr. McCleave were negligent and/or unsuccessful in their treatment of Plaintiff, this does not rise to the level of a constitutional treatment. *See Daniels*, 474 U.S. at 333-34; *see also Irby*, 2006 WL 2827551, at *7 (stating that prisoner plaintiffs were not entitled to the "best" medical treatment available); *Davidson*, 91 Fed. App'x at 965 (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999)) ("Unsuccessful medical treatment, ordinary acts of negligence, or medical malpractice do not constitute a cause of action under § 1983."); *Bennett v. Louisiana ex rel. Dep't Of Pub. Safety and Corr.*, No. 07-31189, 2009 WL 102080, at *4 (5th Cir. Jan. 15, 2009) (affirming dismissal of plaintiff's wrongful death claim against prison officials, reasoning "[w]hile the Appellees may very well have exercised poor medical judgment in not performing additional tests on [the deceased prisoner], [plaintiff] has not shown that their actions rise to the level of deliberate indifference").

To the extent Plaintiff alleges claims against Dr. Woodall and Dr. McCleave in their official capacities, which would in effect be a claim against SMCI or the MDOC, Plaintiff's claims fail as a matter of law. As stated above, there is no respondeat superior liability under Section 1983. *See supra*, *Oliver,* 276 F.3d at 742 & n.6. Further, Plaintiff has failed to allege, much less demonstrate that SMCI or the MDOC implemented a policy, custom or practice that was the "moving force" behind the alleged constitutional violation. *See Monell*, 436 U.S. at 694.

Based on the foregoing, Plaintiff has failed to create a genuine issue of material fact as to whether Dr. Woodall or Dr. McCleave were deliberately indifferent to his serious medical needs. Accordingly, the undersigned concludes Dr. Woodall and Dr. McCleave are entitled to judgment as a matter of law as to Plaintiff's medical claims, in both their individual and official

capacities.

### *April Meggs, Ron King, and Christopher Epps*

Plaintiff claims that Defendants April Meggs, Ron King and Christopher Epps failed to adequately investigate his Administrative Remedy Program ("ARP") complaint regarding inadequate medical treatment for his hand, and failed to ensure that he received appropriate medical attention. Ms. Meggs was the first-step responder to Plaintiff's grievance. Plaintiff claims she falsely stated that he declined a follow-up referral and surgery for his hand. He claims that he never signed a refusal form for medical treatment, which he would have been required to do pursuant to MDOC policy if he actually declined surgery. Thus, he claims that if she would have looked at his medical records and handled his claim correctly, he would have gotten the treatment he needed.

Ron King was the second-step responder to Plaintiff's ARP grievance. Plaintiff claims that he informed Mr. King that Ms. Meggs's first-step response was a lie, and explained the whole situation regarding his hand injury, yet Mr. King provided the same response as Ms. Meggs. Plaintiff claims that Christopher Epps was the third-step responder to Plaintiff's grievance and he replied with basically the same response as Mr. King and Ms. Meggs –that Plaintiff refused to have follow-up surgery. Plaintiff claims that if Mr. King and Mr. Epps would have properly investigated his ARP claim, he would have gotten the medical treatment he needed.

The record reflects that on or about January 10, 2009, Plaintiff submitted an ARP grievance regarding the denial of adequate medical treatment for his hand injury. On February 4, 2009, April Meggs denied his first step, stating that he declined follow-up referral to surgery on October 16, 2008. Ms. Meggs's response is supported by the medical records which show

that when Plaintiff saw Dr. McCleave for a follow-up visit on October 16, 2008 for the fracture to his right hand, she noted that Plaintiff had decreased extension at the PIP joint due to angulation, and that an x-ray taken on October 8, 2008 showed a healing fracture with some angulation. Dr. McCleave also noted that Plaintiff understood the angulation and stated that he would rather not have surgery unless it would make his hand "a lot better." *See* Ex. A [58] to Motion at 20; Ex. C to Motion [44-4].

Plaintiff filed his second step on February 23, 2009, denying that he refused follow-up treatment and stating that he was still experiencing pain and other problems with his right hand. Ron King denied his second step request, stating that Plaintiff had received medical treatment at the University Medical Center on September 10, 2008, that a patient follow-up was declined, and that the SMCI clinic determined there was no further damage to his hand on October 16, 2008. Plaintiff filed his third step on March 18, 2009, stating basically the same thing as his second-step. Dr. Gloria Perry (and not Christopher Epps) denied the third step, stating that Plaintiff's medical record had been reviewed regarding the treatment for his right hand, that he was seen on September 10, 2008 by an off-site provider, and that there was no indication for further intervention. Dr. Perry advised Plaintiff to inform the health care provider at his facility if he was still experiencing problems with his hand. *See* Compl. [1] at 15-33; Memo. [49-2] at 9.

In their Motions [36][41] and Supporting Memoranda [37][47], Defendants argue that Plaintiff has failed to establish that Ms. Meggs, Mr. King, and Mr. Epps violated his constitutional rights, and thus, they are entitled to judgment as a matter of law. In support of their Motions [36][41], Defendants submitted the Plaintiff's Complaint, the Spears Transcript, and certain ARP and medical records. *See* Exs. A-C to Motion [36]; Exs. A-B to Motion [41].

In his Motion to Strike [39], Supporting Brief [40], Motion to Dismiss [48], and

15

Supporting Memorandum [49], all of which the court construes as Plaintiff's responses in opposition to Defendants' Motions [36][41], Plaintiff fails to create a genuine issue of material fact as to whether these Defendants were deliberately indifferent to his serious medical needs. Rather, he states that Ms. Meggs's role as a first-step responder to his ARP grievance "created liability on her part in this case." Motion [39]. He further denies that he ever refused or declined treatment and again states that Defendants have failed to produce a refusal of treatment form signed by Plaintiff, which he states is required by MDOC policy. *See* Motion [39]; Memo. [40]; Memo. [49]. Finally, he again claims that Mr. Epps and Mr. King failed to properly investigate his ARP grievance. *Id.*

Plaintiff's claim that Ms. Meggs, Mr. King, and Mr. Epps failed to adequately investigate his grievance simply does not give rise to a constitutional claim. *See Dehghani v. Vogelgesang*, 226 Fed. App'x 404, 406 (5th Cir. 2007) (holding that plaintiff's allegation that warden failed to adequately investigate his grievance did not amount to a constitutional violation); *Charles v. Nance*, 186 Fed. App'x 494, 495 (5th Cir. 2006); *Woodland v. City of Vicksburg*, No. 5:05cv85-DCB-JCS, 2006 WL 3375256, at *3 (S.D. Miss. Nov. 21, 2006) (stating that claim for "failure to investigate" did not amount to a constitutional violation). Moreover, Plaintiff has no constitutional right to a grievance procedure, and has no due process liberty interest right to having his grievance resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Jones v. Shabazz*, No. H-06-1119, 2007 WL 2873042, at *21 (E.D. Tex. Sept. 28, 2007); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (holding that the mere failure of a prison official to follow the prison's own regulation or policy does not amount to a constitutional violation); *McGowan v. Peel*, No. 3:06cv659-DPJ-JCS, 2007 WL 710154, at *1-*2 (S.D. Miss. March 6, 2007).

Moreover, Plaintiff has failed to show that April Meggs, Ron King or Christopher Epps were deliberately indifferent to his serious medical needs. *See Davidson*, 91 Fed. App'x at 964. There is no supervisory or respondeat superior liability under Section 1983. *See Oliver,* 276 F.3d at 742 & n.6. Accordingly, these supervisory Defendants cannot be held responsible for Dr. Woodall's or Dr. McCleave's alleged denial of adequate medical treatment. *See Thompkins*, 828 F.2d at 304 (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.").

Further, as Defendants point out, Plaintiff has failed to demonstrate that Ms. Meggs, Mr. King, or Mr. Epps were personally involved in the alleged denial of adequate medical treatment, or that they implemented an unconstitutional policy that causally resulted in an injury to Plaintiff. Accordingly, Plaintiff has failed to establish a constitutional violation by these Defendants. *See Johnson*, 2002 WL 243359, at *1; *Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999) (holding that medical director at Parchman was not deliberately indifferent to plaintiff's serious medical needs, where director was not one of plaintiff's treating physicians and had limited contact with plaintiff); *Hailey v. Savers*, 240 Fed. App'x 670, 672 (5th Cir. 2007) (affirming dismissal of prison medical administrator because plaintiff "failed to allege specific facts to demonstrate that [administrator] had personal involvement in placing [plaintiff] in a job assignment that posed a substantial risk of harm or that [administrator] implemented policies to physically harm [plaintiff]"). Defendants correctly note that this court has previously held that a defendant's involvement in the ARP process alone is an insufficient basis upon which to impose constitutional liability. *See Golden v. Walker*, No. 5:08cv156-MTP,

5:08cv292-DCB-MTP, 2009 WL 3448833, at *2 (S.D. Miss. Oct. 21, 2009) (citing cases).[4]

Even if these Defendants were negligent in carrying out their duties in responding to Plaintiff's ARP grievance, this does not meet the high standard of deliberate indifference. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (holding that because the warden and medical treatment director "lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision not to refer [plaintiff] to a doctor to treat his shoulder injury"); *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2nd Cir. 2000) (holding that the failure of the non-doctor defendants– Warden and Health Services Administrator– to intervene in the medical treatment of an inmate was not objectively unreasonable, even if it were wrongful).

Based on the evidence before the court, the undersigned concludes that Ron King, Christopher Epps, and April Meggs are entitled to judgment as a matter of law as to Plaintiff's claims, in both their individual and official capacities.

CONCLUSION

For the reasons stated above, the court finds that Defendants' Motions for Summary Judgment [36][41][44] should be granted. Accordingly,

IT IS, THEREFORE, ORDERED:

1. That the Defendants' Motions for Summary Judgment [36][41][44] are GRANTED and that this action is dismissed with prejudice.

2. Plaintiff's Motion to Strike [39] and Motion to Dismiss [50] are DENIED.

3. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

---

[4]Moreover, as previously stated, there is no evidence that Christopher Epps was even involved in denying Plaintiff's ARP grievance. Dr. Gloria Perry and not Mr. Epps, signed the third step response. *See* Ex. F to Memo. [49-2] at 9.

SO ORDERED this the 24th day of March, 2010.

                                          s/ Michael T. Parker
                                          United States Magistrate Judge